Filed 8/20/14  In re Alejandro V. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ALEJANDRO V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | F067907 |
| Plaintiff and Respondent, | (Super. Ct. No. JJD065740) |
| v. | |
| ALEJANDRO V., | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Cornell, Acting P.J., Franson, J. and Chittick, J.[†]

[†]     Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

The court continued appellant, Alejandro V., as a ward of the court (Welf. & Inst. Code, § 602) after appellant admitted allegations charging him with public intoxication (Pen. Code, § 647, subd. (f))[1] and violating his probation (Welf. & Inst. Code, § 777).

On appeal, appellant contends the court abused its discretion when it committed him to the Tulare County Youth Facility (youth facility). We affirm.

## FACTS

On December 5, 2011, then 15-year-old appellant admitted allegations charging him with possession of a knife on school grounds (§ 626.10, subd. (a)).

During a probation department interview on December 11, 2011, appellant admitted he did not like school, was behind academically, and that he last attended school in March 2011. Additionally, appellant's grandmother reported that his mother had been in and out of jail the majority of her children's lives and was currently involved in a relationship with a man who had just been released from prison. Appellant's grandmother moved in with appellant and his four siblings on November 6, 2011, because appellant's mother was incarcerated on that date on a charge of possession of a controlled substance for which she was subsequently sentenced to a two-year prison term.

On January 9, 2012, the court placed appellant on probation with certain terms and conditions, including that he attend school regularly, abstain from the use of alcohol and drugs, participate in alcohol and drug abuse counseling, participate in anger management and family counseling, and abide by a 10:00 p.m. to 6:00 a.m. curfew.

On April 20, 2012, appellant and a confederate approached two victims, demanded they empty their pockets, and asked for money or drugs. Appellant also asked the victims if they were gang members. When they replied they were not, appellant stated he belonged to the northern gang. When appellant struck one of the victims in the head, a

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

fight ensued and appellant and his confederate fled without taking anything. Appellant was later identified as one of the robbers at an infield show up.

A detention report filed April 24, 2012, indicated appellant was then living with an older brother, his brother's girlfriend, a niece, a nephew and a younger brother.

On April 25, 2012, appellant admitted allegations in a second petition charging him with attempted robbery (§§ 664/211) and misdemeanor battery (§ 242) conditioned on appellant being granted deferred entry of judgment (DEJ) as to those offenses.

During a probation department interview, appellant admitted that prior to committing the above offenses he had been drinking alcohol and did not remember anything from the time he left a friend's house to purchase alcohol until he arrived at the Juvenile Detention Facility. He also had not yet started attending alcohol counseling.

On May 9, 2012, the court placed appellant on DEJ with the same conditions as his probation and ordered him to live with an adult brother.

On May 29, 2012, appellant was drinking with friends in a garage with the door open when police officers walked up the driveway. Appellant hid, but he came out when directed to by the officers.

On October 5, 2012, the probation department filed a notice of DEJ noncompliance alleging, among other things, that appellant failed to abstain from using alcohol and marijuana, abide by his curfew, attend school, enroll in a drug treatment program, enroll in anger management, enroll in individual or family counseling, and complete community service hours.

On October 9, 2012, the probation department filed a notice of violation of probation alleging the same violations as the notice of DEJ noncompliance.

On October 23, 2012, the district attorney filed a third petition charging appellant with resisting arrest (§ 148, subd. (a)(1)) and being a minor in possession of alcohol (Bus. & Prof. Code, § 25662, subd. (a)).[2]

---

**2** Appellant's mother was released from prison sometime in October 2012.

On November 1, 2012, after appellant admitted the allegations in the third petition, the court released appellant on the electronic monitoring program.

On November 11, 2012, the probation department reported to the court that appellant was not in compliance with the terms and conditions of the electronic monitoring program.

On December 19, 2012, the court continued appellant on probation with respect to the first and third petitions and continued him on DEJ with respect to the second petition with the same terms of probation except that he was required to perform an additional 40 hours of community service.

On March 11, 2013, the district attorney filed a fourth petition charging appellant with assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)), a great bodily injury enhancement (§12022.7, subd. (a)) and a gang enhancement (§ 186.22, subd. (b)(1)(C)).

On May 13, 2013, appellant was taken into custody for failing to attend school on time and violating the terms of his release on the electronic monitoring program. He was also dropped from school on that date.

On May 28, 2013, the court dismissed the fourth petition at a jurisdictional hearing at the close of the People's case, pursuant to a motion to dismiss by appellant's counsel. It also terminated appellant from DEJ.

On June 12, 2013, the court placed appellant on probation for the charges in the third petition and added several gang conditions including that he not associate with gang members.

On July 6, 2013, while investigating a vehicle theft, a Lindsay police officer was told by the victim that two gang members approached him while he was reporting the crime and attempted to fight with him. As appellant and another person walked across the street towards the victim and the officer, the victim identified them as the gang members who approached him earlier. The officer contacted appellant and his

4

companion. Although they both denied attempting to fight with the victim, the officer arrested them anyway because their eyes were bloodshot and they each had a strong odor of alcohol.

On July 15, 2013, the district attorney filed a fifth petition charging appellant, who was then 17 years old, with public intoxication (§ 647, subd. (f)), and the probation department filed a notice of probation violation alleging appellant violated his probation by failing to abstain from alcohol and failing to abide by his curfew.

On July 16, 2013, appellant admitted the public intoxication charge and that he violated his probation.

Appellant's probation report indicated that during an interview with a probation officer, appellant denied being a gang member but admitted associating with them. The report also indicated that appellant had 14 excused absences and 29 unexcused absences, had been suspended a total of five days, had a grade point average of only 1.45, and although a junior in high school, had earned only 63.50 of 220 credits needed to graduate. Appellant's probation officer reported that appellant lived in a dysfunctional family and was not being properly supervised.[3]

Further, the authoring probation officer was concerned with appellant's continued use of alcohol and poor decision making skills and believed appellant needed more structure in his life. The officer considered placing appellant in a group home, foster home, or the home of a suitable relative. However, those placements were deemed inappropriate because appellant did not have the social needs that required those types of placements and appellant could receive appropriate services without the need for out of home placement. The officer recommended a placement at the youth facility because it

---

[3] The case plan attached to the report also indicated appellant received inadequate supervision at home and that his mother minimized, denied, justified, or excused appellant's behavior. It also indicated appellant associated with taggers or gang members and that gang associates were gaining considerable influence over him.

would provide appellant the opportunity to participate in alcohol and drug education and counseling, mental health counseling, aggression replacement training, and to continue his education in a secure setting. A commitment there also would provide appellant 24 hour supervision, ensure he refrained from using illegal substances, and instill discipline by providing him with a structured setting and holding him accountable for his actions.

On July 30, 2013, at appellant's disposition hearing, defense counsel argued for a long-term or a modified long-term program. According to defense counsel, the youth facility provided an open dorm setting where appellant would easily be influenced by peer pressure, whereas he would be housed in a single cell in a long-term program. The court, however, followed the probation department recommendation and committed appellant to the youth facility for one year. The court also set appellant's maximum term of confinement at three years six months.

## DISCUSSION

Appellant contends the court abused its discretion when it committed him to the youth facility because: (1) it failed to adequately consider appellant's drug treatment needs; (2) there was no evidence presented at his disposition hearing that the youth facility would be able to provide him with the treatment he needed to address his substance abuse; and (3) the court should have ordered his guardian or the probation department to place him in an outpatient or residential treatment program. We will reject these contentions.

A juvenile court's commitment order may be reversed on appeal only upon a showing the court abused its discretion. (*In re Todd W*. (1979) 96 Cal.App.3d 408, 416.) "'We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them.'" (*In re Lorenza M*. (1989) 212 Cal.App.3d 49, 53.)

In less than three years, appellant had charges sustained in four petitions, violated his probation twice and was terminated from the DEJ program. Further, appellant had

6

problems adhering to a court-ordered curfew, failed to attend court-ordered drug counseling, and he associated with gang members. Appellant also had been suspended a total of 5 days from school, had 14 excused and 29 unexcused absences, was failing school, had not earned enough credits to graduate, and was dropped from school in May 2013. It was also undisputed that appellant had a substance abuse problem involving alcohol and marijuana and more recently with the drug spice. The court could reasonably find from appellant's failure to abide by previous court orders, the inability of his dysfunctional family to control him, his continued association with gang members, and his dismal school attendance and performance that appellant would benefit from being committed to a secure placement. Additionally, at the youth facility appellant would have to attend school, mental health counseling, and drug and alcohol treatment, and he would not be able to use drugs or freely associate with gang members who appeared to be gaining influence over him. The court could also consider the rehabilitative effect of punishment in holding appellant accountable for his behavior and that appellant would benefit from the structure and discipline inherent in a secure commitment. (Welf. & Inst. Code, § 202.)

Further, the court did "adequately consider" his need for substance abuse counseling. The probation report, which the court read, clearly identified alcohol abuse as one of appellant's main problems. It also recommended a youth facility commitment because it would provide appellant the opportunity to receive substance abuse counseling in a secure setting where he would have to attend and ensure that he refrained from the use of illegal substances. At appellant's disposition hearing, defense counsel did not dispute that appellant would receive these services at the youth facility and argued only that appellant should be committed to a long-term program where he would be housed in an individual cell. Accordingly, we reject appellant's contention that there is no evidence in the record that he would receive substance abuse treatment at the youth facility.

Moreover, placement in an outpatient treatment program or long-term residential program was not feasible.  Since neither type of program is provided in a secure setting and appellant had previously disobeyed many court orders, it was unlikely appellant would participate in either type of program.  Further, neither of these placements would address appellant's other issues, such as his dismal school attendance and performance and his association with gang members, and a residential program would be inappropriate for the additional reason that it would interfere with appellant's ability to attend school.  In any event, appellant did not identify at the disposition hearing any outpatient or residential treatment program that he claims he could have been committed to in lieu of the youth facility.  Accordingly, we conclude that the court did not abuse its discretion when it committed appellant to the youth facility.

## DISPOSITION

The judgment is affirmed.